AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____ Massachusetts

Harriet Menezes, plaintiff

V.

Association of Flight Attendants, et al

## SUMMONS IN A CIVIL ACTION

CASE NUMBER: 04 10385 JLT

TO: (Name and address of Defendant)

Paula DiMartino, Inflight
United Airlines, Terminal C
Logan International Airport
Boston, MA 02128

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Harriet Menezes, pro se
169 Thoreau Street, Unit 8
Concord, MA 01742

an answer to the complaint which is served on you with this summons, within ___20___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

TONY ANASTAS

CLERK

(By) DEPUTY CLERK

DATE  7-1-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARRIET MENEZES,
                    Plaintiff                    )
                                                 )
          v.                                     )    C.A. No. 04-10365-JLT

RAO 440 (Rev. 10/93) Summons in a Civil A

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                Date               *Signature of Server*

                                   _____
                                   *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

1    Pro Se
    Harriet Menezes
2    169 Thoreau Street, Apt. 8
    Concord, MA 01742
3

4

5

6    Harriet Menezes,

7          Plaintiff,

8        vs.

9    Association of Flight Attendants,

10   CWA, AFL-CIO, and Karen Scopa

11   individually and as President of

12   Association of Flight Attendants

13   Boston, Sue Cook individually and as

14   representative Secretary Association

15   of Flight Attendant Boston

16   and Steve Fontakis individually and

17   as Manager at United Airlines

18   and Paula DiMartino as Administrative

19   Supervisor at United Airlines

         Defendants

FILED
IN CLERKS OFFICE

2004 FEB 23 P 3:28

U.S. DISTRICT COURT
DISTRICT OF MASS.

) Civil Action
)
) Case No.: 0410365JLT
)
)
) Complaint - By employee against
) employer and union under Sec. 301 of
) LMRA for compensatory damages for
) unlawful discharge and breach of
) union's duty of fair representation,
) and for reinstatement [29 USCA Sec.
) 185, Fed R Civ. P 3, 7(a), 8(a)];
) Labor Management Reporting and
) Disclosure Act 29 CFR, part 401-459;
) and violation of Civil Rights Act,
) Title VII; and Americans with
) Disabilities Act; Family Medical
) Leave Act; Railway Labor Act; breach
) of contract and Whistleblower
) Protection Act.

JFK

## COMPLAINT

### Parties

1. Defendant Company representative Steve Fontakis is a manager of United Airlines which is a corporation organized and existing under the laws of the State of Illinois, and has its principal office and place of business located in the City of Elk Grove Village, State of Illinois, within the

territorial jurisdiction of this Court. This defendant is engaged in aviation transportation in interstate commerce and, at all times mentioned herein, was an employer in an industry affecting commerce, as defined in sections 2(2) and 501(1) and (3) of the Act (29 USCA secs. 152(2), 142(1) and (3)), and within meaning of Sec. 301 of the Act (29 USCA & secmk; 185).

2. Defendant representative of United Airlines, Company, Steve Fontakis', Manager of In-flight, principal place of business is Boston Logan International Airport; Defendant representative of United Airlines, Company, Paula DiMartino, is the administrative supervisor.

3. Defendant representatives of Association of Flight Attendants Union Council 27 Boston Karen Scopa (President) and Sue Cook's (Secretary) principal place of business is Boston Logan airport.

4. Defendant Union the Association of Flight Attendants-CWA is, and at all times hereinafter mentioned was, a labor organization representing employees in an industry affecting commerce as defined in secs. 2(5) and 501(1) and (3) of the Act (29 USCA sec. 152(5), 142(1) and (3)), and within the meaning of sec 301 of the Act (29 USCA sec. 185). During all times hereinafter mentioned, this defendant was the recognized collective bargaining representative of the bargaining union of Company's flight attendants, including plaintiff, employed in Company's In-flight department, at its location in Boston, Logan International Airport.

Jurisdiction

5. Plaintiff brings this action under, and jurisdiction thereof is conferred on this Court by virtue of Sec. 301 of the Labor Management Relations Act,

COMPLAINT - 2

194" (29 USCA Sec. 185), hereinafter referred to as the Act, to recover damages for plaintiff's unlawful discharge by United Airlines, Inc. (Company), who is plaintiff's employer and their representatives, and for breach by defendant Association of Flight Attendants (CWA, AFL-CIO) Local Union and their representatives, of its duty of fair representation owing to plaintiff, and for reinstatement by said employer.

## Facts

6. Plaintiff was employed by the Company United Airlines on April 17, 1999, as a flight attendant, and was continuously in their employ in that classification until August 29, 2003, when plaintiff was unlawfully discharged by defendant, as is more specifically hereinafter alleged.

7. As required by United Airlines, the plaintiff was a compulsory member of the Association of Flight Attendants. The plaintiff was on a work-related medical leave from October 2002 through the date of discharge, August 2003. On August 8, 2003, plaintiff stopped by the United Airlines office to drop off a medical note stating plaintiff "Would like to... attempt to return to work." and a copy of workers compensation order. She also called crew scheduler to inquire of return to work training dates.

8. From September 2001, the plaintiff sought medical counsel for post-traumatic stress after events of September 11, 2001. Pending the Iraqi conflict with higher airline security issues, the plaintiff requested intermittent Family Medical Leave which would allow her to work but permitted her a sick day without being disciplined. On September 18, 2002 United Airlines administrative supervisor (Paula DiMartino) sent an internal email to plaintiff stating her Family Medical leave had been

approved on a "continuous basis." On September 19, the plaintiff protested by email that United had "terminated my employment when I requested Intermittent FMLA." On October 8, 2002, the plaintiff flew a trip from London to Boston. On October 9, plaintiff received a telephone call message from Paula Martino stating "I am removing you from flying." On October 9, a Federal Express letter stated "I would have to remove you from your trips until you cleared United's Medical Department." On October 11, 2002, the plaintiff's medical provider spoke with United's medical provider, Dr. Weiss. On October 31, 2002, Plaintiff emailed the Association of Flight Attendants regarding a grievance that her Intermittent Family Medical Leave had been denied. Subsequent communication was made through May 2003.

9. On December 4, 2002, and several times through 2003, voluntary furlough bids were granted to flight attendants who were not on medical leave. As United needs flight attendants, they were recalled to return to work December 2003, March 15 and April 15, 2004.

10. On April 14, 2003, the plaintiff placed an internal United Airlines complaint regarding disparate treatment of medical disability. This was investigated by United's defendant representative Steve Fontakis, who mailed plaintiff a letter dated May 15, 2003.

11. In a letter dated April 18, 2003, from the Association of Flight Attendant's Paul MacKinnon, the plaintiff was "placed in bad standing pending resolution" of her dues payment with a balance of $156. On April 30, 2003, the plaintiff was able to get a telephone call through to the voice mail of Association of Flight Attendants. On May 5, 2003, a conference call message from the union stated "She's gone to the outside".

1   The plaintiff received a letter dated May 15, from Steve Fontakis,

2   regarding her allegations. The plaintiff received a letter dated May 16

3   with a balance due of $117, from the union's international treasurer Paul

4   MacKinnon stating "As of April 30, 2003, we have not received ... other

5   information.""15 days ... information". "Requesting termination of

6   employment." On May 30, 2003 and August 1, 2003, a certified mail receipt

7   was signed by the Association of Flight Attendants. A non-certified letter

8   dated August 4, 2003 from union Paul MacKinnon stated "We herewith call

9   upon the company to terminate employment." On August 14, 2003 certified

10   mail was sent to United Frank Colosi to dispute validity of Paul

11   MacKinnon's action of termination. On August 18, 2003 Plaintiff called her

12   United Airline's supervisor, Sherry Desmond. The supervisor was on

13   vacation until August 29. A Federal Express letter dated August 27, 2003

14   from United Airlines Frank Colosi stated termination of the plaintiff's

15   employment effective August 29, 2003 (letter copied to AFA union Karen

16   Scopa).

17  12.   Plaintiff received a September 7, 2003 letter from United stating her

18   medical benefits were to terminate. On September 9, 2003, the plaintiff

19   received an electric shut-off notice from her light department. In

20   summary, during 2003 while the plaintiff, diagnosed with a brain tumor,

21   was undergoing medical treatment and financial hardship she was barraged

22   by actions for missed dues, unprocessed grievances, United's appeal to

23   industrial accident, United's appeal to unemployment, discipline for

24   illness, and termination contemporaneously with an action for bankruptcy.

25  13.   On December 3, 1997, defendants herein entered into a collective

bargaining agreement covering the employees, including plaintiff, in the

1    bargaining unit, which agreement was in force during the entire period
2    involved herein. Both defendants have copies of the agreement, and for
3    that reason none is attached hereto. The agreement was entered into by
4    defendants for the benefit of the employees in the bargaining unit, and
5    plaintiff, as a member thereof, is accordingly entitled to the benefit of
6    the agreement and to enforce the provisions thereof.

7    14.    Section 30 of the collective bargaining agreement, entitled Union
8    Security, provides that a copy of discharge letter go to the Senior Vice
9    President of the company regarding delinquent dues.

10   15.    Section 30 of the collective bargaining agreement, entitled Union
11   Security, "D. Review Procedures" establishes a procedure, for the
12   presentation and disposition of grievances, and expressly provides that
13   all cases of discharge, for whatever cause, shall be subject to the
14   grievance procedure. This Articles reads in part as follows: "1. A
15   grievance by an employee who is to be discharged as a result of an
16   interpretation or application of the provisions of this Section shall be
17   subject to the following procedures. a. An employee who believes that the
18   provisions of this Section have not been properly interpreted or applied
19   as it pertains to her/him may submit a request for review in writing
20   within five days from the date of notification by the Director Labor
21   Relations-Inflight, as provided ... b. The Director Labor Relations -
22   Inflight/designee shall forward a decision to the employee with a copy to
23   the union. Said decision shall be final and binding on all interested
24   parties unless appealed as herein provided.  If the decision is not
25   satisfactory to either the employee or the Union, then either may appeal
     the grievance within ten (10) days from the date of the receipt of such

1    decision ... All such grievances shall be processed.... Such grievances

2    shall be heard by the System Board within six months of receipt of the

3    decision by the Director Labor Relations~Inflight.  2. During the period a

4    grievance is being handled.. the employee shall not be discharged from the

5    Company."

6    16.    Section 30 of the collective bargaining agreement, entitled Union

7    Security, Section H. "General" provides that "collection of dues missed

8    because the employee's earnings were not sufficient to cover the payment

9    of dues ... will be the responsibility of the Union... It will be the

10   Union's responsibility to verify apparent errors with the individual Union

11   member ..."

12   17.    Article XI of the AFA Constitution and Bylaws, entitled "Hearing and

13   Appeal Procedures", establishes discipline for "refusing or willfully

14   neglecting to pay dues, initiation fee, assessments, fines or financial

15   obligations to the Union." The plaintiff's request for waiver and

16   assistance substantiates she did not refuse or willfully neglect dues.

17   18.    Article XII of the AFA Constitution and Bylaws, entitled "Delinquency,

18   Bad Standing and Loss of Membership", establishes that an employee may

19   make "satisfactory arrangements for payments". It also provides that an

20   employee may be subject to expulsion "provided that if the member's Local

21   Executive Council and the International Secretary-Treasurer of the Union

22   believe that extenuating circumstances exist, and the International

23   President concurs, the individual may be permitted to remain delinquent as

24   deemed reasonable." All certified mail and communication sent by the

25   Plaintiff to Paul MacKinnon, the International Secretary-Treasurer of the

1  Union were not responded to or acknowledged by the union except by U.S.
2  Postal Service return receipt.

3  19.    As alleged above, plaintiff was discharged by Company. The notice of
4  discharge recited, as the supposed reason for the action taken, that
5  plaintiff failed to pay union dues and the Union had failed to hear from
6  her. Plaintiff denies that she willfully refused to pay union dues, and
7  further denies that there was "just cause" for her dismissal as required
8  by the agreement. Plaintiff alleges that the true reasons for her
9  discharge were retaliation for filing workers compensation claim;
10  retaliation for filing grievances; retaliation for claim of harassment
11  based on medical absence; disability; and plaintiff's comments on security
12  violations related to September 11, 2001 events; filing of aviation safety
13  reports on October 2, 2002 and July 2, 2002  (Federal Aviation
14  Administration, Whistleblower Protection Act).

15  20.    Plaintiff protested her discharge to defendant Union's representative
16  serving plaintiff's department by filing a grievance and written
17  correspondence. A grievance was not filed by defendant Union on
18  plaintiff's behalf. The grievance was not carried to any steps of the
19  grievance procedure by the defendant Union or Company.

20  21.    Defendant union failed to acknowledge or process grievances and instead
21  permitted the time for doing so to lapse. Defendant Union and Company did
22  not give advice or notice on remedies or process, on the contractual
23  grievance procedure and legal recourse. Plaintiff's filing of grievances,
24  telephone calls, and letters to remedy situation before and after
25  discharge of employment were futile pursuits. The matter of her discharge
filed as a grievance by plaintiff and efforts to process a grievance or to

COMPLAINT - 8

1   have the union process a grievance on September 29, 2003 (wrongful
2   discharge), and October 2002 (Family Medical Leave Act) were futile. Mr.
3   Frank Colosi who is United's labor relations manager, did not offer
4   procedure or remedies; or consent to an investigation when urged to do so
5   by plaintiff (August 14, 2003, September 29, 2003 and November 15, 2003).
6   22.   The plaintiff received a letter from Frank Colosi dated January 15,
7   [2004] which then gave notice that an appeal of his decision should have
8   been made within 10 days of August 27, 2003. The January 15 letter was
9   copied to International-Treasurer of union, Shirley Barber.
10  23.   Defendant union failed to acknowledge or process Plaintiff's request
11  for waiver of union dues. Nor did the defendant Union give the plaintiff
12  an option of a minimal burden of paying reduced Union dues in violation of
13  the Railway Labor Act, Sec 2, 45 USCA sec. 152, or notice of Decks rights
14  not to pay dues to the union or withdraw from the union, or to pay dues to
15  a charitable foundation (e.g. the Cause Foundation), or notice on dues
16  deferral (agenda item 29 of the union committee meeting of October 15-17
17  2002, and January 21-23, 2003). Defendant Union did discuss waiver of
18  union dues and granted waiver of union dues for those who were not on
19  medical leave (Committee meeting January 21-23, 2003). Defendant Union
20  thus deferred from its usual practice or custom in the handling of dues
21  delinquencies. The Defendant Union did not give Plaintiff the following
22  opportunities (as outlined in the ABC's of Membership): 1. to have a
23  "promissory agreement to assist in payment of delinquent dues as afforded
24  other flight attendants; 2. Deferred – due to financial hardship; 3.
25  "Standing A" "FA's delinquency or dues billing are being researched"; 4.
    Grievance pending – dues not owed; 5. Non-paying. This flight attendant

COMPLAINT - 9

has no obligation to AFA." The Defendant union waived its rights under 29 USCS sec. 158(b)(2) to seek discharge of employee for failure to pay union dues in absence of granted waiver, or discussing late or partial payment of dues. Requests of investigation into payment of union dues were sent to Paul MacKinnon (AFA International Treasurer) via certified mail on May 28, 2003, and July 30, 2003. Plaintiff had returned dues bills with the back form filled out with leave of absence box checked off. Adjustments on June 9, 2003 bill were made to February 2003 after telephone call to union requesting waiver paperwork. Plaintiff made telephone call to defendant union on April 30, 2003 stating she was not happy the voicemail box was full for last few days, that the FFA had voided her voting ballot, that she was on medical leave, and request for waiver. The April 18 letter from AFA Paul MacKinnon stated balance of $156 is due, the May 16 letter stated $117 balance reflecting plaintiff's contact with union.

24.     Plaintiff alleges the fact to be that defendant Union, in breach of its statutory duty of fair representation owing to plaintiff under the provisions of the Act, conspired with Company to permit plaintiff's discharge to stand, although there was no just cause therefor; that the negotiations between defendants with respect to plaintiff's grievance were spurious, carried on in bad faith, and deliberately designed to give plaintiff the false impression that a sincere effort was being made by defendant Union to resolve the grievance by securing plaintiff's reinstatement; that, unknown to plaintiff, the officials of defendant Union, including Karen Scoopa, the official who represented plaintiff's grievance, were secretly hostile to plaintiff because of plaintiff's objections that Family Medical Leave Act grievance and medical grievances

COMPLAINT - 10

1   of plaintiff were not filed/processed (under violation of the Americans
2   with Disabilities Act, 42 USC sec. 12101 et seq. the union discriminated
3   and retaliated against plaintiff based on her work-related disability) and
4   therefore plaintiff's subsequent filing of a workers compensation claim,
5   and because plaintiff had a medical disability, and therefore the
6   defendant Union decided to acquiesce in plaintiff's discharge; that at
7   grievance meetings of defendants that were not attended by plaintiff it
8   was agreed between them that Company's action would not be opposed and
9   that no demand for arbitration of plaintiff's discharge would be made by
10  defendant Union. Defendant Union and Company with inexcusable neglect
11  failed to respond to grievances and request for investigation, under
12  actions that were arbitrary, discriminatory and in bad faith.

13  25.  From November 2002 through May 2003, Plaintiff inquired of defendant
14  Union representatives Karen Scopa and Sue Cook as to the status of her
15  grievances on sick leave policy and intermittent Family Medical Leave. No
16  explanation was given. Their unethical practice and behavior was reported
17  by the Plaintiff to the Association of Flight Attendants Employee
18  Assistance Program in May 2003. This included a derogatory messaged
19  conference call left on plaintiff's answer machine by Defendant union
20  representatives Karen Scopa who is the Boston council union President, and
21  Sue Cook who is the Boston Secretary.

22  26.  This is also an action of retaliation for speaking out against a union
23  official.

24  27.  This is also an action to establish liability of corporate officer for
25  corporation's wrongful conduct in relation to union representatives.

28.    This is also an action to establish liability of corporate officer for corporation's wrongful conduct in relation to United Airlines representatives.

29.    A meeting of executive boards were held May 20-21, July 22-34 and October 24-27, 2003, and January 13-15, 2004, where defendant Union had decided not to take her grievances on dues waiver and thereafter wrongful discharge to arbitration. Plaintiff alleges that the union officials constituting the executive board did not entertain grievances, that their decision not to demand arbitration was not an exercise of good faith judgment on their part, but, rather, was made because of their hostility to plaintiff and in pursuance of their conspiracy and agreement with the defendant Company as previously alleged.

30.    Both Defendant Union and defendant company representative, Paula DiMartino, discriminated against employee in violation of Title VII when they allowed all flight attendants during 2002 and 2003, except those on medical leave, to take a job-protected furlough. Flight attendants on medical leave were coerced to "clear medical" before they could take a furlough. Paula DiMartino is the contact for clearing medical.

31.    Section 704(a) of the Title VII of the 1964 Civil Rights Act ("Title VII"), (42 USC sec. 2000e(3)(a)) Retaliation). The plaintiff has a prima facie claim that her termination by United Airlines and the Association of Flight Attendants was due to retaliation thus in violation of Title VII. The plaintiff was terminated, an adverse employment action, in retaliation for statutorily protected conduct by filing workers compensation claim, and two medical related grievances. A causal connection exists between the protected activity and adverse employment action. The plaintiff was

1    terminated within two weeks of giving United Airlines a return to work
2    notice. A return to work would have placed plaintiff in automatic payroll
3    deduction for dues. The union did not approve of her filing a workers
4    compensation claim, of going "to the outside" as Sue Cook stated.
5    Termination due to union dues was a pretext. It follows that this is also
6    a Retaliation claim against the union as an employer. The Association of
7    Flight Attendants may be considered an employer Under Title VII, as it is
8    an interstate commerce and has at least 15 employees. 42 U.S.C. §
9    2000e(b).

10   32.   The defendant Company representative, Paula DiMartino, discriminated
11   against employee in violation of Title VII when they refused to
12   acknowledge or process her workers compensation claim for work-related
13   Post Traumatic Stress Disorder until ordered by the Massachusetts
14   Department of Industrial Accidents. The Company withdrew their Appeal of
15   Conference Order in July 2003, within one month of employee's termination.
16   United Airline's representing attorney, Scott Smith, in a letter dated May
17   23, 2003 stated "I am returning the original [dues] invoice to you as
18   United is not required to pay your union dues as part of the worker's
19   compensation case."

20   33.   This is a cause of action for discharge in retaliation for filing a
21   workers compensation claim.

22   34.   This is a cause of action to recover workers' compensation benefits for
23   injury resulting from aggravation or acceleration of, or combination with,
24   pre-existing condition. The plaintiff sustained disability, post-traumatic
25   stress, was awarded by Department of Industrial Accidents for March 2003.
     The medical condition, in fact, was treated from March 2002 through the

COMPLAINT - 13

1    date of discharge, August 2003. The plaintiff requests that the defendant

2    company records reflect her medical leave as a workers compensation leave

3    for her absence from October 2002 through August 2003.

4    35.    Title VII Liability for the Union as a Labor Organization. Title VII

5    liability is established pursuant to 42 U.S.C. § 2000e-2(c) and/or 2000e-

6    3. There is still a violation of Title VII without violation of the duty

7    of fair representation as the union failed to pursue issues against

8    Company, and is liable by acquiescence of Company's misconduct in not

9    furthering union grievances on medical leave and policy. Defendant Boston

10   Union representatives Karen Scopa, and Sue Cook, and union international

11   treasurer Paul MacKinnon created a hostile environment related to union

12   membership in their handling or lack of handling of grievance issues

13   thereby ratifying Defendant Company's removal of the Plaintiff from her

14   position as a flight attendant.

15   36.    Americans with Disabilities Act 42 USC Sec. 12112(b)(5)(A). When

16   Defendant Company representative Paula DiMartino, of United Airlines

17   refused to allow the plaintiff Intermittent Family Medical Leave to

18   accommodate for her work-related Post Traumatic Stress Disorder, they did

19   not make reasonable accommodation to the known mental limitation of an

20   otherwise qualified individual with a disability who is an employee of the

21   company (violating the Americans with Disabilities Act). This would

22   include a modified work schedule. Instead the Defendant "removed" the

23   plaintiff from her flying schedule on October 9, 2002. The plaintiff's

24   removal from work increased her Post Traumatic Stress Disorder and

25   depression. 42 U.S.C. § 12203(a), respectively. The ADA also includes a

provision stating: "It shall be unlawful to coerce, intimidate, threaten,

COMPLAINT - 14

1    or interfere with any individual in the exercise or enjoyment of, or on

2    account of his or her having aided or encouraged any other individual in

3    the exercise or enjoyment of, any right granted or protected by [the

4    ADA]."

5    37.    The Defendant Paula DiMartino of United Airlines violated Family

6    Medical Leave Act by coercing plaintiff into full time continuous medical

7    leave in October 2002 rather than allowing her intermittent Family Medical

8    Leave as requested by her medical provider. Defendant Union was culpable

9    in not processing her grievance of October 2002, on the Family Medical

10   Leave matter which resulted in her loss of employment, income, ability to

11   pay union dues, and afford her due process with the U.S. Department of

12   Labor.

13   38.    29 CFR Sec. 1630.15 In absence of accommodation, the plaintiff filed a

14   grievance with the Defendant union. The union did not process the

15   grievance. But for the negligence of the Union in filing the grievance,

16   and defendant Company's refusal to accommodate the plaintiff's disability,

17   the plaintiff lost the opportunity to return to work which would have

18   permitted her to pay union dues. The Association of Flight Attendants

19   violated 29 CFR Sec. 1630 when it refused to represent the plaintiff in

20   acknowledging her Family Medical Leave grievance.  The disability could

21   have been reasonably accommodated by Company policy that was already

22   sanctioned (furlough, intermittent medical leave). The plaintiff was

23   forced to use all her family medical leave in one continuous period,

24   leaving the rest of her medical leave in an unprotected status.

25   39.    Plaintiff alleges that the Collective Bargaining Agreement is an

unconscionable contract for members in regards to discharge for failure to

1    pay union dues. The Collective Bargaining Agreement is inconsistent and
2    ambiguous, violating the respective AFA Articles of Incorporation, and
3    U.S. Labor Law. Members arbitrarily placed in "bad standing" are
4    apparently fully ostracized from the union grievance process making it
5    impossible for them to proceed administratively within the Defendant union
6    and company in actions against them.

7    40.  Complaint - by union member expelled for exercise of rights under sec.
8    101(a)(2) of LMRDA - for reinstatement, injunction, and compensatory and
9    punitive damages [29 USCA sec. 411(a)(2), 412, 529; Fed R Civ P 8(a), 65].
10   Plaintiff, a resident of the City of Concord, State of Massachusetts,
11   brings this action under, and jurisdiction is conferred on this Court by,
12   the provisions of sections 101(a)(2), 102, and 609 of the Labor-Management
13   Reporting and Disclosure Act of 1959 (29 USCA sec. 411(a)(2), 412 and
14   529), hereinafter referred to as the LMRDA.

15   41.  Plaintiff was a member of defendant Association of Flight Attendants
16   Local Council 27, an unincorporated association, hereinafter referred to
17   as defendant local union.

18   42.  The violations of the LMRDA hereinafter alleged occurred in the City of
19   Boston, State of Massachusetts, within the territorial jurisdiction of
20   this court.

21   43.  The defendant local union Association of Flight Attendants is the
22   collective bargaining representative of employees, including this
23   plaintiff, of United Airlines Corporation, certified as such under the
24   provisions of the National Labor Relations Act, as amended (29 USCA sects
25   151 et seq) or is recognized as the collective bargaining representative
     of employees, including this plaintiff, of United Airlines Corporation an

COMPLAINT - 16

1   employer engaged in an industry affecting commerce within the meaning of

2   sec. 3(j)(2) of the LMRDA (29 USCA sec. 4102 (j)(2)), and is therefor, a

3   labor organization engaged in an industry affecting commerce within the

4   meaning of sec. 3(j)(1) of the LMRDA [29 USCA sec. 402 (j)(1)].

5   44.  The individual defendants, Karen Scopa, and Sue Cook, are respectively

6   the President and Secretary of defendant local union, whose principal

7   place of business is in the City of Boston, State of Massachusetts, within

8   the territorial jurisdiction of this Court.

9   45.  On or about May 16, 2003, plaintiff was served by defendant union

10  notice of purported charges, alleging that the union had not heard from

11  plaintiff regarding payment of union dues (balance due $117.). Copied on

12  letter were MEC president of United Airlines and LEC President Council 27

13  (Karen Scopa). On May 5, union President Karen Scopa and Sue Cook left a

14  conference call message running on plaintiff's answer machine saying

15  "She's gone to the outside" and other derogatory comments.

16  46.  Plaintiff alleges that such charges were wholly spurious and were

17  instigated by the individual defendants in reprisal for statements made by

18  plaintiff, outside union meetings, criticizing said defendants' conduct in

19  their capacity as officials of defendant local union in not filing

20  grievances. The plaintiff reporting the defendant's conduct to the union

21  Employee Assistant Program were protected by the provisions of sec.

22  101(a)(2) of the LMRDA (29 USCA sec. 411(a)(2)); the actions of defendant

23  local union in expelling plaintiff from membership by placing her in bad

24  standing and of the individual defendants in instigating plaintiff's

25  discharge under that section and under sec. 609 of the Act (29 USCA sect.

    529); and plaintiff is accorded the right under section 102 of the LMRDA

COMPLAINT - 17

1    (29 USCA 412) to file the instant action to secure appropriate relief

2    against said defendants.

3    47.    The plaintiff had filed and won a workers compensation suit in relation

4    to events of September 11, 2001. The plaintiff had also filed two

5    grievances with the Boston office, which were not processed by the Union,

6    against the United Airlines policy disciplining flight attendants who were

7    sick, and not allowing flight attendants the use of Intermittent Family

8    Medical Leave.

9    48.    Plaintiff attempted to seek waiver of union dues, as advised by United

10    Airlines' flight attendant charity "The Cause Foundation", and other

11    methods to exhaust her administrative remedies for at least four months

12    before and after her termination from employment. In addition to

13    exhausting perceived internal union and United Airline policy, researching

14    standards and procedure of a myriad of administrative agencies was unduly

15    burdensome being far beyond the scope and knowledge of a reasonable person

16    standard.

17    49.    Plaintiff was unfairly disciplined by being placed in "bad standing"

18    and then terminated without a full and fair hearing accorded by right

19    under 29 USCS 411(a)2 and (5). She was not afforded adequate procedural

20    protections and did not know of ways to remedy the situation.

21    50.    Plaintiff seeks to be reinstated as an employee with United Airlines,

22    without being a compulsory member of the defendant local union. However,

23    plaintiff is fearful that if she is reinstated, defendants will continue

24    to mismanage fees/union money processing and United Airlines management

25    will block administrative due process for non-unionized flight attendants.

COMPLAINT - 18

51.  Defendant Union and Company violated Personnel Records Law
     (Massachusetts General Laws Chapter 149, Section 52C) and the Labor
     Management Reporting and Disclosures Act, when each refused to acknowledge
     a request from plaintiff for a copy of her personnel file and records
     related to union dues. The Company continued to violate law when attention
     was requested in letter to Mr. Frank Colosi, on November 26, 2003 from
     Assistant Attorney General Rosalyn Garbose. Therefore plaintiff requests a
     supoena deuces tecum for files.

52.  Plaintiff respectfully requests a supoena deuces tecum for production
     of all documents and disposition related to plaintiff from the Association
     of Flight Attendants, information on the number of waivers of union dues
     granted other flight attendants, the number of dues deferrals given, other
     methods processed on dues delinquency and the circumstances, and
     information on the processing of her grievances.

53.  Plaintiff respectfully requests an injunction to return to work as a
     flight attendant pending investigation.

54.  As a result of plaintiff's discharge by Company, in violation of
     plaintiff's rights under the collective bargaining agreement, and in
     breach by defendant Union of its duty of fair representation owing to
     plaintiff, as alleged above, plaintiff has suffered grievous and extensive
     damages, as follows: Loss of wages ($1723-$2,266 per month), past and
     future, loss of per diem pay (approximately $400 per month), loss of
     health coverage including cost to pay for future operation and care of a
     brain tumor ($300,000), of health coverage and cost for future medical
     care on findings from mammography irregularity ($100,000), of company life
     insurance coverage ($74,000), loss of opportunity to attend vocational

COMPLAINT - 19

training ($75,000.). Anticipated monies for court costs (current, remand,
appeal) ($100,000).

55. The plaintiff requests a trial by jury.

56. Therefore, plaintiff prays that the Union and United Airlines set out
in writing legal employment rights afforded those members who are in "bad
standing" with the union, and/or those employees who choose not to be a
member of the union. This would be akin to A "bill of rights" under Title
I of the LMRDA, which safeguards against improper disciplinary action from
the union. This would include procedural rights of union members in union
disciplinary proceedings. This should also include an unambiguous written
procedure for those employees who believe they have been part of an unfair
or defective proceeding of the labor union in expelling, suspending, or
terminating them.

57. Plaintiff desires to be reinstated to her former job at defendant
Company in a non-hostile environment, without attempt of termination
during flight attendant certification training, and alleges that she is
entitled to such reinstatement retroactive to the date of her discharge,
without any break in her seniority. Plaintiff also prayers for relief in
the above amounts ($700,000) damages, compensatory and punitive damages.

Dated this 23rd day of February, 2004

*Harriet Menezes*
Harriet Menezes
169 Thoreau Street,
Apt. 8
Concord, MA 01742
Pro Se
(978)369-4693

COMPLAINT - 20