## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————————

|  |  |
|---|---|
| Harriet Menezes | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )   C.A. No. 04-10365 JLT |
|  | ) |
| Association of Flight Attendants, CWA, | ) |
| AFL, CIO, and Karen Scopa, individually | ) |
| and as President of Association of Flight | ) |
| Attendants Boston, Sue Cook individually | ) |
| and as representative Secretary Association | ) |
| of Flight Attendant Boston and Steve | ) |
| Fontakis, individually and as Manager at | ) |
| United Airlines, and Paula DiMartino as | ) |
| Administrative Supervisor at United | ) |
| Airlines, | ) |
| Defendants. | ) |

———————————————————————————)

## PAULA DIMARTINO'S MEMORANDUM
## IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Plaintiff Harriet Menezes ("Plaintiff") was a flight attendant employed by United Airlines ("United" or the "Company") and assigned to United's facilities at Boston Logan International Airport. Plaintiff was represented in her employment at United for purposes of collective bargaining by the Association of Flight Attendants ("AFA" or "Union"), the duly designated collective bargaining representative of United's flight attendants. United terminated Plaintiff's employment because she breached her obligation to pay her union dues and failed to remedy that breach despite opportunities to do so -- a result that is (as Plaintiff concedes, Complaint ¶¶ 13-15) allowed by law and required by the collective bargaining agreement between United and AFA (the "CBA")[1]

———————————————————————————

[1] Relevant excerpts from the AFA-United CBA are attached as <u>Exhibit</u> B to the Affidavit of Frank Colosi ("Colosi Aff.").

In this lawsuit, Plaintiff brings forth a variety of claims (which are oftentimes hard to decipher) against Defendant Paula DiMartino[2] ("Ms. DiMartino"), a United supervisor currently furloughed from the Company.  Plaintiff alleges that Ms. DiMartino terminated Plaintiff's employment in violation of (1) M.G.L. ch. 151B, (2) the Americans with Disabilities Act ("ADA"),[3] (3) the Family Medical Leave Act ("FMLA"),[4] (4) the Massachusetts Workers' Compensation statute,[5] (5) the Labor-Management Relations Act ("LMRA"),[6] (6) the Labor Management Relations Disclosure Act ("LMRDA"),[7] (7) the "Federal Aviation Administration, Whistleblower Protection Act,"[8] and (8) the Railway Labor Act ("RLA").[9]  Plaintiff also alleges (9) "breach of contract" (the contract being the United-AFA CBA) and a separate violation under (10) the Massachusetts Access to Personnel Records Law.[10]

For a myriad of reasons, none of Plaintiff's claims should survive summary judgment.  First, virtually all of Plaintiffs claims are (by Plaintiff's own description) inextricably intertwined with questions involving the interpretation or application of the United-AFA CBA.  Because the RLA

---

[2] Plaintiff also names as a defendant Steve Fontakis, another supervisory employee at United.  Fontakis has not been served, although each of the reasons why the Complaint should be dismissed as to DiMartino are also fully applicable to the claims she asserts against Fontakis.

[3] 42 U.S.C. §12117, *et seq.*  In her Complaint (attached to Defendant DiMartino's Motion for Summary Judgment at Tab A), Menezes, a *pro se* plaintiff, does not specify whether she is claiming a violation of federal and/or state anti-discrimination law.  For the purposes of this motion, Ms. DiMartino assumes that the Complaint is based on both federal and state law.

[4] 29 U.S.C. § 2601 *et seq.*

[5] M.G.L. ch. 152 § 75B.  Specifically, Plaintiff seems to allege that DiMartino terminated her employment in violation of the M.G.L. ch. 152 and she seeks workers' compensation benefits pursuant to that statute.

[6] 29 U.S.C. § 185.

[7] 29 U.S.C. § 439.

[8] As discussed below, Plaintiff here apparently means to refer to Section 519 of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"), Public Law 106-181, codified at 49 U.S.C. § 42121.

[9] 45 U.S.C. § 151 et seq.

[10] M.G.L. ch. 149 § 52C.

BO1 15667384.2

relegates all such so-called "minor disputes" to mandatory and exclusive arbitration procedures, the Court lacks subject matter jurisdiction and the Complaint fails to state an actionable claim.

Even if that were not the case, however, DiMartino would still be entitled to judgment on each of Plaintiff's baseless potpourri of claims. Turning first to Plaintiff's claims under the federal labor statutes, to the extent Plaintiff purports to state any RLA claims against DiMartino, they must be dismissed because DiMartino is not a "common carrier by air" and therefore is not liable under the RLA. Concerning Plaintiff's LMRA claims, Plaintiff lacks standing, and this Court lacks jurisdiction to consider such claims, because airlines and their employees are covered by the RLA and specifically exempted from the scope of the LMRA, and because DiMartino (in any event) is not an "employer" and therefore not liable under the LMRA. As for the LMRDA, it regulates internal union governance matters only and therefore does not provide a remedy against Ms. DiMartino, who was a non-union-represented supervisor employed by United. Plaintiff's efforts to pursue a whistleblower claim are fatally deficient because the governing statute confers no jurisdiction on the district courts and instead prescribes an exclusive administrative complaint procedure which Plaintiff never followed, and because any such claim is in any event now time-barred.

Plaintiff's discrimination and other claims fair no better. Plaintiff failed to exhaust her administrative remedies with respect to her discrimination claims and any such claims are now time-barred by the applicable 300-day statute of limitations. Moreover, Plaintiff's FMLA claims fail not only because she does not plead sufficient facts to raise a cognizable claim under the statute, but also because the undisputed facts establish that she did not work the requisite 1250 hours required to qualify for the statute's protections. Judgment is warranted on Plaintiff's claims under the Massachusetts' Access to Personnel Records law because there is simply no private right of action for a violation of this statute; the Massachusetts Attorney General's Office would have to pursue those

claims against United and it has not done so.  Finally, Plaintiff's claim for workers' compensation benefits must be dismissed because she must pursue any such claim under the exclusive remedial scheme provided for under state law.

In short, all of Plaintiff's claims are both factually and legally deficient.  Ms. DiMartino is therefore entitled to summary judgment in all respects.

## SUMMARY OF FACTS FOR PURPOSES OF SUMMARY JUDGMENT[11]

From September 26, 1999 through May 28, 2003, Ms. DiMartino was an On-Board Administrative Supervisor at United's Boston Logan International Airport facility.  Statement of Undisputed Facts ("Facts"), ¶ 1.  Plaintiff began her employment with United as a Flight Attendant on April 17, 1999.  Facts ¶ 4.  As a Flight Attendant, Plaintiff was a member of and represented by the AFA.  Complaint ¶¶ 4, 7; Facts ¶ 5.

### Plaintiff's Request for Leave

Approximately one year after the events of September 11, 2001, Plaintiff sought intermittent family and medical leave citing stress after the events of September 11, 2001.  Complaint ¶ 8. Because Plaintiff did not work 1250 hours in the 12 months preceding her leave request, she was not eligible for job protection under the federal Family Medical Leave Act ("FMLA").  Facts ¶ 7; *see* 29 U.S.C. § 2611(2).  Plaintiff was, however, eligible for non-statutory leave under United's more-generous family and medical leave ("FML") policy, applicable to flight attendants.  This voluntarily adopted policy, which is subject to unilateral modification by the Company, provides a lower hours-worked threshold for flight attendants than they are entitled under the federal FMLA.  Colosi Aff. ¶ 6.

---

[11] The "facts" set forth herein are based in large part on the allegations contained in the Complaint.  They are presented as true solely for purposes of the instant Motion for Summary Judgment, in light of the principle that the courts will review the "undisputed facts in the light most favorable to the non-movant…drawing all reasonable inferences in [her] favor."  *See Terry v. Bayer Corp.*-145 F.3d 28, 30, (1st Cir. 1998); *see also Estades-Negroni v. Assocs. Corp. of N. Am.*, 377 F.3d 58, 62 (1st Cir. 2004).

On September 18, 2002, Ms. DiMartino advised Plaintiff that United had granted her medical leave request under its voluntary flight attendant FML policy on a continuous basis. Facts ¶ 8. On October 8, 2002, Ms. DiMartino advised Plaintiff that United had removed her from flying until its medical department cleared her to return to duty. Complaint ¶ 8. Shortly thereafter, Plaintiff filed a grievance with the AFA stating United had terminated her employment and denied her request for intermittent medical leave. Complaint ¶ 8. Plaintiff's employment had not been terminated and her request for medical leave (FML or otherwise) had been granted, not denied.

As an AFA-represented employee, Plaintiff was obligated to pay monthly union dues, while working and while on her leave of absence. CBA, § 30; Complaint ¶¶ 13-16. Between April 18, 2003 and August 1, 2003, the AFA notified Plaintiff in writing on multiple occasions that she was in bad standing with the Union for failure to pay dues and requested that she pay the dues owed. Complaint ¶ 11. Because Plaintiff failed to pay the full amount of dues she owed to the Union, on August 4, 2003, the AFA sent a letter to United requesting that, per the CBA, United terminate Plaintiff's employment. Complaint ¶ 11. Pursuant to the terms of the CBA, and as permitted by law, United complied with this request.[12] On August 14, 2003, Plaintiff sent Frank Colosi, United's Director of People Services - Onboard Service, a letter disputing her termination and asking for a reversal of the decision. Facts ¶ 15. On August 27, 2003, Mr. Colosi replied in writing to Plaintiff's letter and advised her that he was denying her request because Plaintiff had sufficient notice of her delinquency and failed to resolve the matter. Mr. Colosi notified Plaintiff that her termination would be effective on August 29, 2003. Facts ¶ 15.

---

[12] "§ 2, Eleventh [of the RLA, 45 U.S.C. § 152, Eleventh] contemplated compulsory unionism to force employees to share the costs of negotiating and administering collective agreements, and the costs of the adjustment and settlement of disputes." *International Ass'n of Machinists v. Street*, 367 U.S. 740, 764 (1961). Therefore, employees may, pursuant to a CBA, be "obliged, as a condition of continued employment, to make the payments to their respective unions called for by the agreement." *Id*. at 771.

5

On November 19, 2003, more than two months after she received notice of her termination, Plaintiff sent a letter to Mr. Colosi requesting an appeal of his August 29, 2003 decision. Facts ¶ 17. The letter was dated September 29, 2003 but not postmarked until November 15, 2003. Colosi Aff. ¶ 9. Mr. Colosi notified Plaintiff in writing on January 15, 2004, that he was denying the appeal because it was untimely. Facts ¶ 17. Plaintiff filed her Complaint in this Court on February 23, 2004.

## ARGUMENT

Summary judgment is warranted when there are no genuine issues of material fact in dispute and the record entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-237 (1st Cir. 2002). "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Id.* at 236. To overcome a properly supported summary judgment motion, the opposing party must introduce "enough competent evidence" to enable a factfinder to decide in its favor on the disputed claims. *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to create a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir. 1993); *see also J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996) ("'[N]either conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment.").

I.    **BECAUSE VIRTUALLY ALL OF PLAINTIFF'S CLAIMS TURN UPON THE INTERPRETATION AND APPLICATION OF THE CBA BETWEEN UNITED AND THE AFA, THEY ARE PREEMPTED OR SUPERSEDED BY THE RLA'S MANDATORY AND EXCLUSIVE ARBITRATION PROVISION AND THE COURT LACKS SUBJECT MATTER JURISDICTION.**

The RLA, initially enacted in 1926 to govern labor-management relations in the railroad industry, was amended in 1936 to include the airline industry within its coverage. *See* 45 U.S.C. §§ 201-204, 49 Stat. 1189-91 (1936). The RLA mandates administrative procedures for the resolution of

6

three categories of labor controversies generally known as "representation disputes," "major disputes,"

and "minor disputes."[13]  Because all of Plaintiff's claims require interpretation or application of the

United-AFA CBA, they at most give rise to RLA minor disputes.  As such, they fail to state a claim

upon which relief can be granted or over which this Court may exercise subject matter jurisdiction.

A minor dispute is one that arises "out of grievances or out of the interpretation or application

of agreements concerning rates of pay, rules, or working conditions."  *Consolidated Rail Corp.* 491

U.S. at 302 (quoting RLA Sections 2, Sixth and 3, First (i), 45 U.S.C. §§ 152, Sixth and 153, First (I)).

A minor dispute "contemplates the existence of a collective agreement already concluded ….[T]he

claim is to rights accrued, not merely to have new ones created for the future." *Id.* at 303 (quoting

*Burley*, 325 U.S. at 723).  Thus, minor disputes involve "controversies over the meaning of an existing

collective bargaining agreement in a particular fact situation."  *Id.* at 305 (quoting *Trainmen v.*

*Chicago R.&I.R. Co.*, 353 U.S. 30, 33 (1957)).[14]

The RLA requires an airline to establish, with each union representing employees of that

airline, a private bilateral arbitration ("adjustment") board to hear unresolved minor disputes.  *IAM v.*

*Central Airlines, Inc.*, 372 U.S. 682, 686 (1963) (quoting 45 U.S.C. § 184); *Hawaiian Airlines v.*

*Norris*, 512 U.S. 246, 253 (1994) ("RLA mechanisms [require] an adjustment board established by the

---

[13] In this context, the terms "major" and "minor" do not denote the importance of the dispute, but rather "are terms of art in the case law under the [RLA.]"  *Chicago & N.W. Transp. Co. v. Railway Labor Exec. Ass'n*, 908 F.2d 144, 148 (7th Cir. 1990), *cert. denied*, 498 U.S. 1120 (1991).

[14] By contrast, major disputes are those over "the formation of collective bargaining agreements or efforts to secure them.  They arise where there is no such agreement or where it is sought to change the terms of one.…"  *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989) (quoting *Elgin, J. & E. R. Co. v. Burley*, 325 U.S. 711, 723 (1945)).  The RLA mandates that major disputes be submitted to "an almost interminable process" of negotiation and mediation for attempted resolution.  *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 149 (1969) *("Shore Line").*

Representation disputes involve questions concerning which labor organization, if any, may represent a given craft or class of a carrier's employees for collective bargaining purposes under the RLA.  RLA § 2, Ninth, 45 U.S.C. §152, Ninth.

BO1 15667384.2

employer and the unions").[15]  It is axiomatic that "<u>Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts,</u>" *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (per curiam) (emphasis added); s*ee also Consolidated Rail Corp.*, 491 U.S. at 304 n.4 ("In the airline industry, . . . a minor dispute is resolved by an adjustment board established by the airline and the unions."); *Slocum v. Delaware, L. & W.R. Co.,* 339 U.S. 239, 243-44 (1950) (stressing "paramount importance" of preserving the "exclusive" jurisdiction of the statutorily mandated grievance and arbitration procedures), <u>and that the statutorily required grievance and arbitration processes are mandatory and exclusive</u>.  *Consolidated Rail Corp.,* 491 U.S. at 304 ("The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes."); *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320 (1972); *Bhd. of Loc. Eng. v. Louisville & N.R.R.*, 373 U.S. 33, 38 (1963) ("this statutory grievance procedure is a mandatory, exclusive, and comprehensive system").

Courts have therefore consistently held that the RLA preempts employee claims that arise from or require the application or interpretation of a collective bargaining agreement.  *See, e.g.*, *Andrews*, 406 U.S. at 322 ("arbitration of a discharge grievance, a minor dispute, is not a matter of voluntary agreement under the [RLA]; the Act compels the parties to arbitrate minor disputes") (quotation marks and citation omitted); *Tice v. American Airlines, Inc.,* 228 F.3d 313, 315, 318-19 (7th Cir. 2002)

---

[15]  In the railroad industry, the RLA requires unions and carriers to submit unresolved minor disputes to the statutorily created National Railroad Adjustment Board ("NRAB") or, alternatively, to *ad hoc* bodies called public law boards ("PLBs"), for final and binding arbitration.  45 U.S.C. §§ 152, Sixth, 153; *Central Airlines*, 372 U.S. at 685.  When Congress extended the RLA to airlines in 1936, it chose not to create an equivalent to the NRAB; instead, it gave the NMB the discretion to decide whether "it shall be necessary to have a permanent national board of adjustment."  *Central Airlines*, 372 U.S. at 685-86 (quoting 45 U.S.C. § 185).  Until such a National Board is created for the airline industry, the RLA requires airlines and unions to establish private bilateral adjustment boards.  45 U.S.C § 184.

Typically, an airline and a union will establish their board of adjustment on a "system-wide" basis – i.e., covering all employees represented by that union throughout the airline's system in the United States.  Such a board is known as a system board of adjustment, or "SBA."  *Central Airlines*, 372 U.S. at 686.  As noted by the AFA Defendants (Brief at 4), the CBA covering United's flight attendants does just that.

(captains who brought ADEA challenge to airline's refusal to permit them to downgrade to flight officer had to arbitrate their claims instead; their claims were "dependent on their preferred interpretation of the agreement," and "only the arbitral boards convened under the aegis of the of [RLA] have the authority to determine the rights conferred by a collective bargaining agreement in the airlines industry"); *Robinson v. Union Pac. R.R.,* 245 F.3d 1188, 1191 (10th Cir. 2001) ("Under the RLA, employee grievances regarding termination are categorized as minor disputes and are to be resolved by arbitration."); *Pilkington v. United Airlines,* 112 F.3d 1532, 1536 (11th Cir. 1997) (airline pilots' breach of contract and tortious interference claims failed because claims required of CBA); *O'Brien v. Consolidated Rail Corp.* 972 F.2d 1, 5 (1st Cir. 1992) (railroad employee's disability claim under Massachusetts state law preempted by the RLA because to permit litigation in court of claims connected with CBAs would undermine purpose of RLA); *Downey v. American Airlines, Inc.*, 1992 U.S. Dist. LEXIS 17077, *14 (D. Mass. 1992) ("American's decision to terminate Downey as a flight attendant due to her physical handicaps was an action arguably justified by the terms of the . . . collective bargaining agreement.  Consequently, the plaintiff's state handicap discrimination claim is preempted.  Under the terms of the RLA, the parties are required to resolve this dispute first by negotiation and then, failing settlement, by binding arbitration.").

Here Plaintiff herself characterizes her Complaint as one "to recover damages for plaintiff's unlawful discharge by United Airlines" (Complaint ¶ 5), premised in part on her allegations that a "breach of contract" occurred (Complaint ¶ 5) and that "there was [no] 'just cause' for her dismissal as required by the [United-AFA CBA]." (Complaint ¶ 19).  Plaintiff's own characterization of this issue makes clear that it is a quintessential, garden-variety minor dispute if ever there was one.

Each of Plaintiff's claims, in fact, is inseparable from interpretation of the CBA.  For example, Section 30 provides that all flight attendants must become members of the Union "or pay to the Union

each month a service charge equal to the regular and usual monthly dues."  CBA, § 30.  It sets forth in detail the opportunity and procedures flight attendants will have to cure delinquencies and the notices they must receive before discharge for failure to pay dues before serious charges may occur.  *See id.* Section 30 also discusses the procedure by which employee members should appeal the AFA's decision.  *See* Complaint ¶ 15.  Plaintiff inexcusably failed to make payment on her dues or seek alternate relief *for six months* before the AFA finally exercised its CBA right to seek her termination pursuant to Section 30 of the CBA.  Plaintiff's subsequent attempt to access the CBA's appeal process was untimely and not in conformance with the CBA.  A court cannot decide even one of these claims without reviewing and interpreting Section 30.  *See O'Brien,* 972 F.2d at 5.

Accordingly, Plaintiff's discrimination, FMLA, workers; compensation, retaliation, LMRA, LMRDA, "breach of contract," whistleblower" and violation based on the Access to Personnel Records Act claims are all preempted or superseded as a matter of law.  *See also* Brief of AFA Defendants at 6-8 (setting forth examples of why this dispute cannot be resolved without the interpretation and application of the CBA).

## II.    DiMARTINO IS NOT A "COMMON CARRIER BY AIR" AND THEREFORE CANNOT BE LIABLE UNDER THE RLA

When Congress brought the airline industry under the RLA in 1936, it did so by providing that, insofar as employers were concerned, "the Act . . . shall cover every common carrier by air engaged in interstate or foreign commerce"  45 U.S.C. § 181.  Because Ms. DiMartino is not (and is not alleged to be) a "common carrier by air engaged in interstate or foreign commerce," she cannot be held personally liable for any purported violation of the RLA.

BO1 15667384.2

III.    **PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS FAIL BECAUSE SHE DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES AS REQUIRED BY LAW, BECAUSE ANY ADMINISTRATIVE CHARGE NOW WOULD BE TIME-BARRED, AND BECAUSE MS. DIMARTINO, AS AN INDIVIDUAL, IS NOT LIABLE UNDER THE ADA.**

Prior to filing a claim of discrimination in state or federal court, a plaintiff must exhaust all administrative remedies with the appropriate anti-discrimination agency. *See Bonilla v. Muebles JJ. Alvarez, Inc.* 194 F.3d 275, 277 (1st Cir. 1999). Therefore, a plaintiff must file a charge of disability discrimination under M.G.L. ch. 151B, § 4 with the MCAD, and/or a charge under the ADA with the EEOC[16], the state and federal agencies charged with the processing and investigation of discrimination claims. *See id.; see also Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 12 (1st Cir. 1997) (the ADA follows Title VII procedural which requires exhaustion before filing claims in court); *Harrison v. Boston Fin. Data Srvs., Inc.,* 37 Mass. App. Ct. 133, 135 (1994) (under Massachusetts law, a complaint must be timely filed with MCAD before a plaintiff may proceed in court).

Plaintiff failed to allege that she exhausted her administrative remedies, rendering these claims deficient. Moreover, Plaintiff cannot cure this pleading defect because she did not file a charge of discrimination with either the MCAD or the EEOC. *See Bonilla,* 194 F.3d at 277.

Nor, at this point, can Plaintiff file an administrative charge, as any such charge would be time-barred. To be timely, charges filed with either the EEOC or the MCAD must be filed within 300 days of the alleged act of discrimination. *See* M.G.L. ch. 151B § 5; 42 U.S.C. §12117. United terminated Plaintiff's employment effective August 29, 2003. *See* Complaint ¶ 11. Plaintiff therefore had until June 24, 2004 to file any charge of discrimination with the MCAD or the EEOC. *See* Colosi Aff. ¶¶ 10, 11; DiMartino Aff. ¶ 4. Because Plaintiff failed to exhaust her administrative remedies within the period of time required by statute, her disability claims fail as a matter of law.

---

[16] Complainants alleging violations of federal and state anti-discrimination laws may opt to automatically cross-file their complaints with the EEOC when they file a Charge of Discrimination with the MCAD.

11

Finally, Plaintiff cannot state a viable claim against Ms. DiMartino under the ADA because there is no individual liability under the ADA. *See Garcia-Velazquez v. Frito Lay Snacks Caribbean*, 358 F.3d 6, 8 (1st Cir. 2004). Therefore, DiMartino as an agent of United, has no liability under that statute. For any and all of these reasons, Plaintiff's discrimination claims are without merit and summary judgment is warranted.

## IV.    PLAINTIFF'S FMLA CLAIM FAILS BECAUSE SHE CANNOT ESTABLISH THAT SHE WAS AN ELIGIBLE EMPLOYEE UNDER THE STATUTE.

While United's Flight Attendants are eligible for company-provided leave (to care for themselves or their family members) that is similar to the federal FMLA, Plaintiff has no right to leave under the FMLA. To state a claim under the FMLA, an employee must show that she worked at least 1250 hours with the employer during the previous 12 months prior to requesting the leave. *See* 29 U.S.C. § 2611(2). Plaintiff failed to plead that essential element in her complaint, likely because she cannot establish it. She did not work the statutorily required 1250 hours in the 12 months immediately preceding her request for leave.[17] In fact, Plaintiff's employment records establish that she worked only 693.37 hours in the 12 months preceding September 1, 2002 -- nowhere close the statutory threshold for FMLA standing. Facts ¶ 7.

## V.    PLAINTIFF'S CLAIMS UNDER THE WORKERS' COMPENSATION STATUTE ARE PREEMPTED BY THE EXCLUSIVE REMEDIES ESTABLISHED BY THE ACT AND BY THE RLA.

Plaintiff alleges that "this is an action to recover workers' compensation benefits." Complaint ¶ 34. This Court is not empowered to grant her such benefits. *See* M.G.L. ch. 152 § 2. Massachusetts provides employees who suffer work-related injuries or illnesses with an exclusive administrative remedy. *See* M.G.L. ch. 152 § 10. To be eligible for such benefits, Plaintiff must file for benefits and

---

[17] Plaintiff requested family and medical leave in September 2002. United approved her leave under its non-statutory FML policy. *See* Complaint ¶ 8.

register appeals with the Massachusetts Department of Industrial Accidents.  *See* M.G.L. ch. 152 § 6.

Therefore, any claims Plaintiff makes for workers' compensation benefits in this action are therefore

preempted by the administrative scheme.

Plaintiff also alleges retaliation for filing workers' compensation claims.  For the reasons

discussed more fully above, however, those claims are at best minor disputes preempted by the RLA.

United terminated Plaintiff's employment pursuant to its obligation under the CBA.  To resolve

Plaintiff's retaliation claim, the Court would have to consider whether United properly terminated

Plaintiff's employment pursuant the CBA.  *See Sullivan v. Raytheon Co.*, 262 F.3d 41 (D. Mass.

2001), *cert. denied* 122 S.Ct. 931 (2001).  Because Plaintiff's workers' compensation retaliation claim

is inextricably linked her termination in accordance with the CBA, it is preempted by the RLA and

should be dismissed accordingly.  *See Troconis v. Lucent Technologies Inc.*, 160 F. Supp. 2d 150, 154

(D. Mass. 2001) (section 301 of the LMRA preempts plaintiff's workers' compensation retaliation

claims).

## VI.    BECAUSE UNITED IS AN AIRLINE, THIS COURT LACKS JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT, AND DIMARTINO IS NOT, IN ANY EVENT, AN "EMPLOYER."

Plaintiff appears to bring her Complaint in large part under Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185.[18]  Indeed, the Complaint premises subject

matter jurisdiction on the fact that Plaintiff purports to bring this action under Section 301.  Complaint

¶ 5.  Plaintiff's attempt fails, however, because the LMRA does not apply to airlines or to the labor

relations of employees of airlines.  Even if that were not the case, Ms. DiMartino is not "an employer"

under the LMRA and could not be held liable, under Section 301 or otherwise, for any purported

violations of that statute.

---

[18]  Congress passed the National Labor Relations Act ("NLRA," also known as the "Wagner Act") in 1935.  49 Stat. 449 (1935).  It amended the NLRA by passing the LMRA in 1947.  61 Stat. 136 (1947).  The terms "NLRA" and "LMRA" are generally used interchangeably in referring to the NLRA as amended by the LMRA.

13

**A.    Employers And Employees Subject To The RLA Are Excluded From The Jurisdiction Of, And Are Not Subject To Suit Under, The LMRA.**

The LMRA -- which was passed in 1947, 11 years after Congress amended the RLA to include the airline industry within its coverage, *see supra* -- specifically excludes "any person covered by the Railway Labor Act" from its definition of a covered "employer."  29 U.S.C. § 152 (2).  Likewise, the LMRA's definition of covered "employees" excludes "any individual employed by an employer subject to the Railway Labor Act."  29 U.S.C § 152 (3).

Because United is "engaged in aviation transportation in interstate commerce" (Complaint ¶ 1), it is unquestionably covered by and subject to the RLA.  *See* RLA § 181, 45 U.S.C. § 201 (RLA applies to "any common carrier by air engaged in interstate or foreign commerce, and … every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers").  It is therefore clear that United, its employees, and its labor-management relations are not subject to the LMRA, that Plaintiff (as a former United employee) lacks standing to assert any claim under the LMRA, and that this Court lacks jurisdiction over any LMRA claim Plaintiff purports to assert.  *See, e.g., Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 376 (1969) (LMRA definitions of "employer" and "employee" "expressly exempt from the [LMRA's] coverage and employees and employers subject to the Railway Labor Act"); *Fechtelkotter v. ALPA,* 693 F. 2d 899, 902-03 (9th Cir. 1982) ("[T]he pilots also cannot assert rights under Section 301(a) of the LMRA.  The airline pilots, their union and [the airline by which they were employed] are subject to the RLA; sections 2(2) and (3) of the LMRA consequently defines them out of LMRA coverage."); *Bruno v. Northeast Airlines, Inc.,* 229 F. Supp. 716, 718 (D. Mass. 1964) (action by airline employees against their former employer under LMRA Section 301 failed to state a claim over which the Court had jurisdiction; "Congress [intended] to exclude completely from the scope of the 1947 Act the whole

14

field of labor-management relations for which Congress had provided a separate regulatory scheme in the [RLA].").

### B. Defendant DiMartino Is Not An "Employer" And Therefore Cannot Be Liable Under the LMRA.

Plaintiff concedes that Ms. DiMartino is an "administrative supervisor" for United at Boston Logan International Airport.  Complaint ¶ 2.[19]  Plaintiff does not and could not allege that Ms. DiMartino was an "alter ego" of United, let alone any facts that would support such an inference, and the undisputed material facts in any event conclusively demonstrate that she is not.  Facts ¶ 2. Accordingly, any purported LMRA claim by Plaintiff against Ms. DiMartino is fatally deficient because an individual supervisor is not liable as an "employer" under the LMRA – even in an industry that (unlike the airline industry) is covered under the LMRA.  *See, e.g., Carpenters Health & Welfare Fund of Philadelphia v. Kenneth R. Ambrose, Inc.*, 727 F.2 279, 284 (3d Cir. 1983) (even though individual defendants were sole officers and majority shareholders of employer, court reversed finding of personal liability against them under LMRA Section 301 in absence of evidence that they acted as "alter egos" of the employer); *Kindness v. Bethlehem Steel Corp.*, 716 F. Supp. 1538 (M.D. Pa. 1987) (individual managers who allegedly defamed plaintiff cannot be individually sued under Section 301); *Amalgamated Cotton Garment v. J.B.C. Co. of Madera*, 608 F. Supp. 158, 166 (W.D. Pa. 1984) (even corporate officers of employer are not liable under Section 301, unless at a minimum they are acting as "alter egos of the employer").  Accordingly, Plaintiff's claims under the LMRA simply fail.

## VII.    THE LMRDA DOES NOT APPLY TO MS. DIMARTINO, AN AGENT OF UNITED.

Plaintiff asserts that Ms. DiMartino somehow violated her LMRDA rights, but fails to assert facts sufficient to allow an understanding of the essence of this claim.  Even putting this fatal pleading

---

[19]   Likewise, she alleges that defendant Fontakis (who remains unserved) is simply a manager in United's employ. Complaint ¶ 1.

deficiency aside, this claim fails because the LMRDA does not apply to conduct by an employer or its agent – it only applies to a labor organization's relationship with its members and its internal procedures. *See Hussein v. Hotel Emples. & Restaurant Union Local 6*, 1999 U.S. Dist. LEXIS 14876, * 7 (S.D.N.Y).

The legislative history of the LMRDA makes clear that Plaintiff cannot assert LMRDA claims against Ms. DiMartino. *Reed v. United Transp. Union,* 488 U.S. 319, 325 (1989). The LMRDA guards again union abuses and gives union members the right to speak out against union leadership and participate freely in the union without fear of reprisal. *Id.* Accordingly, the provisions that were eventually enacted as Title I of the LMRDA are called the "Bill of Rights of Members of Labor Organizations." *See Finnegan v. Leu,* 456 U.S. 431, 435 (1982) (LMRDA's primary objective is to ensure unions are democratically governed and responsive to the will of their membership"). Ms. DiMartino, as an agent of United, is not a member of union leadership and she is not affiliated with the Union in any official capacity. Plaintiff's LMRDA claims, therefore, fail as a matter of law.

**VIII. ANY ALLEGED "AVIATION SAFETY" WHISTLEBLOWER/RETALIATION VIOLATION IS PRECLUDED BY "AIR 21," THE FEDERAL STATUTE THAT FULLY OCCUPIES THIS AREA, ESTABLISHES EXCLUSIVE ADMINISTRATIVE PROCEDURES, AND PRESCRIBES A 90-DAY STATUTE OF LIMITATIONS WITH WHICH PLAINTIFF FAILED TO COMPLY.**

Alleging that she was discharged "by Company" [sic] in "retaliation" for her "filing of aviation safety reports on October 2, 2002 and July 2, 2002," Plaintiff purports to state a cause of action against Ms. DiMartino under the "Federal Aviation Administration, Whistleblower Protection Act." Complaint ¶ 19. Presumably, Plaintiff refers to the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"), Public Law 106-181, enacted on April 5, 2000. Even if she does not, AIR 21 fully occupies the field of aviation-safety "whistleblower" retaliation claims, and makes clear on the undisputed facts here that any such claims by Plaintiff fail as a matter of law.

16

Section 519 of AIR 21, codified at 49 U.S.C. § 42121, protects certain employees against retaliation by their air-carrier employers based on their having provided information to the employer or the Federal Government relating to air carrier safety violations, or having filed, testified, or assisted in a proceeding against the employer relating to any alleged violation of a Federal Aviation Administration ("FAA") regulation or any other air-safety law.  49 U.S.C. § 42121(a).  AIR 21 allows a covered employee to file, within 90 days of the alleged retaliation, a complaint with the Secretary ("the Secretary") of the Department of Labor ("DOL").  *Id.* § 42121(b).  The statute establishes detailed, mandatory administrative procedures – administered by the DOL and its subordinate agency, the Occupational Safety and Health Administration ("OSHA") – for the handling of such complaints.[20]

---

[20]  Upon receipt of the complaint, the Secretary must provide written notice to both the person named in the complaint who is alleged to have violated the Act ("the named person") and the FAA of the allegations contained in the complaint, the substance of the evidence submitted with the complaint, and the rights of the named person throughout the investigation.  49 U.S.C. § 42121(b)(1).  The Secretary must then, within 60 days of receipt of the complaint, afford the named person an opportunity to submit a response and meet with the investigator to present statements from witnesses, and conduct an investigation.  *Id.* § 42121(b)(2)(A).  The Secretary may conduct an investigation, however, only if the complainant has made a prima facie showing that the alleged discriminatory behavior was a contributing factor in the unfavorable personnel action alleged in the complaint and the named person has not demonstrated, through clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.  *Id.* § 42121(b)(2)(B)(1).

After investigating a complaint, the Secretary shall issue a determination letter.  *Id.* § 42121(b)(2)(A).  If, as a result of the investigation, the Secretary finds there is reasonable cause to believe that discriminatory behavior has occurred, the Secretary must notify the named person of those findings along with a preliminary order which requires the named person to abate the violation, reinstate the complainant to his or her former position and provide make-whole relief and compensatory damages to the complainant, as well as costs and attorney's and expert fees reasonably incurred.  *Id.* §§ 42121(b)(2)(A) & 42121(b)(3)(B).  The complainant and the named person then have 30 days after the date of the Secretary's notification in which to file objections to the findings and/or preliminary order and request a hearing on the record.  The filing of such objections stays any remedy in the preliminary order except for preliminary reinstatement.  *Id.* § 42121(b)(2)(A).  If a hearing before an administrative law judge is not requested within 30 days, the preliminary order becomes final and is not subject to judicial review.  *Id.*

If a hearing is held, AIR21 requires it be conducted "expeditiously."  *Id.*  The Secretary has 120 days after the "conclusion of a hearing" in which to issue a final order, which may provide appropriate relief or deny the complaint.  *Id.* 42121(b)(3)(A).  Until the Secretary's final order is issued, the Secretary, complainant and the named person may enter into a settlement agreement which terminates the proceeding.  *Id.*  If a violation is found, the Secretary shall assess against the named person, on the complainant's request, a sum equal to the total amount of all costs and expenses, including attorney's and expert witness fees, reasonably incurred by the complainant in bringing the complaint to the Secretary or in connection with participating in the proceeding which resulted in the order on behalf of the complainant.  *Id.* 42121(b)(3)(B).  The Secretary also may award a prevailing employer an attorney's fee, not exceeding $1,000, if he or she finds that the complaint is or has been brought in bad faith.  *Id.* 42121(b)(3)(C).

BO1 15667384.2

Responsibility for receiving and investigating these complaints has been delegated to the Assistant Secretary for OSHA.  Secretary's Order 5-2002 (67 FR 65008, October 22, 2002); Secretary's Order 1-2002 (67 FR 64272, October 17, 2002). Hearings on determinations by the Assistant Secretary are conducted by the DOL's Office of Administrative Law Judges, and appeals from ALJ decisions are decided by the DOL's Administrative Review Board. *See* Secretary's Order 1-2002.

Under AIR 21, Plaintiff's "whistleblower"/retaliation claim is fatally deficient for several reasons.  First and most important, Congress simply has not conferred any jurisdiction on the district courts under the comprehensive and exclusive provisions, procedures, and remedies established by AIR 21; indeed, even after an employee exhausts the detailed administrative process prescribed by AIR 21 – procedures Plaintiff here does not allege even to have *initiated* – the aggrieved party's remedy is to file an appeal with the appropriate United States Court of Appeals.  42 U.S.C. § 42121(b)(4).  Under such circumstances, this Court lacks subject matter jurisdiction to consider Plaintiff's claims.  *See, e.g., Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986) (federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto).

Second, AIR 21 – like the other statutes upon which Plaintiff purports to sue Ms. DiMartino – makes clear on its face that the prohibitions and remedies provided therein extend only against an "air carrier or contractor or subcontractor of an air carrier" and not to individual carrier employees.  42 U.S.C. § 42121(a)(1).  Third, even if the Court had jurisdiction over Plaintiff's "whistleblower"/retaliation claims, AIR 21 prescribes that such claims be filed "not later than 90 days after the date on which such violation occurs."  42 U.S.C. § 42121(b)(1).  Plaintiff alleges (and Ms. DiMartino accepts as true for purposes of this motion) that United told her she was terminated in

---

Within 60 days of the issuance of the final order, any person adversely affected or aggrieved by the Secretary's final order may file an appeal with the United States Court of Appeals for the circuit in which the violation occurred or the circuit where the complainant resided on the date of the violation. *Id.* 42121(b)(4).

August 2003 (Complaint ¶ 11) – well longer than 90 days prior to her filing of the instant Complaint. For any and all of these reasons, Plaintiff's "whistleblower"/retaliation claims are utterly without merit and Ms. DiMartino is entitled to judgment as a matter of law.

## IX.    PLAINTIFF'S CLAIM FOR RELIEF PURSUANT TO THE PERSONNEL RECORDS LAW FAILS BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER THAT STATUTE.

Plaintiff alleges a violation of M.G.L. ch. 149 § 52C, the Massachusetts Access to Personnel Records law, and purports to pursue a private right of action for United's alleged failure to provide her with a copy of her personnel file in a timely manner.  Complaint ¶ 51.  Plaintiff's claim fails as a matter of law because only the Massachusetts Attorney General is empowered to interpret and enforce the provisions of the statute.  *See* M.G.L. ch. 149 § 52C.

Massachusetts General Laws ch. 149 § 52C generally requires employers to make employees' personnel records available for their review, to provide employees a copy of such records upon written request, and to retain such records pending the final disposition of any cause of action in which such records are relevant.  *See Estate of Joseph P. Talarico, Jr. v. City of Cambridge,* 1999 Mass. Super. LEXIS 12, *3; *see also* M.G.L. ch. 149 § 52C.  The statute provides for the resolution of disputes concerning the content of an employee's personnel file through a variety of methods.  *See* M.G.L. ch. 149 § 52C.  "The statute also states that violations of its terms are punishable by fines, and that it 'shall be enforced by the attorney general.'"  *See Talarico*, 1999 Mass. Super. at *3.

Plaintiff alleges that Ms. DiMartino violated M.G.L. ch. 149 § 52C by failing to provide her with a complete copy of her personnel file within a reasonable time after her initial request.  The statute does not, however, grant Plaintiff authority to enforce its provisions through a civil action. *Talarico,* 1999 Mass. Super. at *6.  As the Court noted in *Estate of Joseph P. Talarico, Jr. v. City of Cambridge*, "[w]hen a private cause of action under a statute is intended, the Legislature expressly grants such a right." 1999 Mass. Super. at *4.  *See also Local 1445, United Food & Commercial*

*Workers Union v. Police Chief of Natick,* 29 Mass. App. Ct. 554, 558 (1990) (union lacked standing to enforce Sunday laws where M.G.L. ch. 136 § 10 empowered only specified public officers to seek injunctive relief from violations).

Plaintiff's attempt to assert a claim on her own behalf therefore fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Paula DiMartino respectfully requests that this Court grant it summary judgment on Plaintiff's complaint and dismiss this action with prejudice.

Respectfully submitted,

PAULA DIMARTINO,
By her attorneys,

/s/ Yvette Politis
Brigitte Duffy (BBO No. 565724)
Yvette Politis (BBO No. 644986)
SEYFARTH SHAW
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Dated:  September 23, 2004          (617) 946-4800

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY THAT on September 23, 2004, a copy of the foregoing document has been served by federal express upon Harriet Menezes, 169 Thoreau Street, Unit 8, Concord, MA 01742.

/s/ Yvette Politis
Yvette Politis

BO1 15667384.2